FILED

09/23/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0156

DA 25-0156

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 216N

IN RE THE PARENTING OF:

J.E.B. and B.L.B.,

      Minor Children,

JESSICA L. BROOKS,

      Petitioner and Appellee,

  and

MATTHEW J. BROOKS,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DR-22-40
Honorable Molly Owen, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Matthew J. Brooks, Self-Represented, Plains, Montana

      For Appellee:

          Emily A. Lucas, Brandi R. Ries, Ries Law Group, P.C., Missoula, Montana

Submitted on Briefs:  July 16, 2025

Decided:  September 23, 2025

Filed:

                                _____
                                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Matthew J. Brooks (Matthew) appeals from the orders of the Twentieth Judicial District Court adopting an amended parenting plan proposed by Appellee Jessica L. Brooks (Jessica) that imposed upon Matthew the requirement of supervised visitation with the parties' children, and contained a plan that would allow unsupervised parenting time only upon Matthew's completion of several program requirements.

¶3 Matthew was represented by counsel before the District Court, but is self-represented on appeal. There have been numerous filings by the parties regarding the briefing in the case. Ultimately, the Court denied Jessica's motion to dismiss the appeal and permitted Matthew to file an amended opening brief, which he filed on May 16, 2025. In her answer brief, Jessica argues that the appeal, as now framed by Matthew's amended opening brief, is untimely, because he appears to be challenging the District Court's order entered on February 6, 2024, but his notice of appeal was not filed until February 21, 2025, over a year later. In his reply brief, Matthew states he is also contesting the District Court's order of February 12, 2025, which denied his motion for revision of the parenting plan and that, in any event, he asks that the Court grant an out-of-time appeal if his appeal is deemed to be untimely. Matthew's notice of appeal did reference the February 12, 2025 order, and

was filed seven days after the order was entered. We are mindful that M. R. App. P. 4(3)(b) provides that "[a]n appeal from a judgment draws into question all previous orders and rulings excepted or objected to which led up to and resulted in the judgment," and note that Matthew contested the parenting issue before the District Court throughout the proceeding. Given the collective content of all his filings, we deem his appeal to have been timely filed.

¶4 In August 2023, the parties' marriage was dissolved, and the District Court adopted the parties' stipulated parenting plan for their two minor children, J.E.B. and B.L.B. In November 2023, Jessica sought an ex parte order immediately adopting her proposed amended parenting plan and setting a hearing for Matthew to appear and show cause why the amended parenting plan should not remain in place as the final parenting plan. Jessica's motion was based upon allegations that Matthew had engaged in acts of violence toward Erica, a subsequent partner of Matthew's, which had resulted in Matthew being charged with Partner Family Member Assault (PFMA). There were further allegations of Matthew consuming alcohol during times of parenting the children and their observation of his violent behaviors. The District Court granted the request, entering the ex parte order and adopting Jessica's proposed amended parenting plan as the interim parenting plan.

¶5 In January 2024, the show cause hearing was conducted and witnesses testified, including Erica, following which the District Court entered its Findings of Fact, Conclusions of Law, and Order. The District Court noted that the original Final Parenting Plan prohibited the parents from permitting the children to be subjected to 1) persons using alcohol or illegal drugs, or 2) use of profane language or domestic violence. Jessica testified, as found by the District Court, about incidents of domestic violence during her

3

marriage to Matthew, her belief that Matthew's violence was linked to her, and her hope that the presence of Matthew's new partner after the dissolution of their marriage would be a "protective factor for the children when being parented by" Matthew. The District Court found, however, that since entry of the original Final Parenting Plan, Matthew had perpetrated numerous instances of physical violence on Erica, including when her children and the parties' children (J.E.B. and B.L.B.) were present, and had used alcohol in the presence of the children despite the prohibition against doing so within the Final Parenting Plan. The District Court delineated the numerous violent episodes in detail and noted that they were undisputed. It further found that:

> Despite having engaged in programs for batterers since entry of the Order to Show Cause, [Matthew] describes his behavior as being "out of control" and things "getting out of hand." [Matthew's] description of these violent incidents is deficient. [Matthew] lacks true understanding of what causes him to abuse his partners and until he can truly understand his battering behavior, the parties' children will continue to be at risk of exposure to domestic violence while in [Matthew's] care.

¶6 Addressing the statutory considerations of the children's best interest, the District Court found that Matthew's mental health was a concern, and that it was in the children's best interest that he obtain mental health care and participate in individual counselling, noting that he had pointed a firearm at the head of his former partner in the preceding nine months. It found that Matthew struggled with chemical abuse or chemical dependency, and that it was in the children's best interest that he submit to a chemical dependency evaluation and comply with all recommendations of the evaluation, which it also ordered. It adopted the amended parenting plan as the new final plan, which required supervised visitation by Matthew until such time as he completed a batterer's program, parenting

4

classes, chemical dependency assessment and recommendations, individual therapy, and resolution of the pending criminal case against him. Matthew challenges these requirements on appeal.

¶7 We review a district court's factual findings pertaining to a parenting plan to determine if they are clearly erroneous. *Boeshans v. Boeshans*, 2025 MT 187, ¶ 16, 423 Mont. 450, 573 P.3d 1226. "A finding of fact is clearly erroneous if not supported by substantial evidence, the lower court misapprehended the effect of the evidence, or we are firmly convinced a mistake was made." *Boeshans*, ¶ 17 (citation omitted). We review a district court's orders on parenting for an abuse of discretion. *Boeshans*, ¶ 16.

¶8 Matthew argues that prohibitions in the original Final Parenting Plan were only to be applied "directly prior to or during a visit with the children," that there was no evidence of alcohol use during the alleged incident with Erica that led to the PFMA charge, and that this incident occurred outside of parenting time. However, even if Matthew is correct in this regard, the District Court found there were other incidents, described as undisputed, in which Matthew violated the prohibition by drinking and committing violent acts in the presence of the children. Matthew also contends that the Amended Final Plan violates the best interest of the children because supervised visitation "disrupts J.E.B. and B.L.B.'s bond with me and their sense of security." However, the District Court found, to the contrary, that "[s]ince residing primarily with [Jessica] and having only supervised parenting time with [Matthew], the minor children are doing well. The parties' youngest child is exhibiting less aggressive behavior than he was when he was having unsupervised parenting time with [Matthew]." Matthew argues that he has already "demonstrated

rehabilitation" through the programs in which he has participated. However, again, the District Court found, at the time of the entry of the order, that Matthew, despite some initial therapy, had not yet successfully demonstrated an understanding of the causes of his abusive behavior, and continued to present a risk of domestic violence to the children until he satisfactorily completes the programs required by the amended plan.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact were not clearly erroneous, and its order entering the Amended Parenting Plan was not an abuse of discretion.[1]

¶10 Affirmed.

/S/ JIM RICE

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

---

[1] On July 16, 2025, after this case was sent to the Court and classified, Matthew filed a Motion for Leave to File Supplemental Reply Brief Addressing New Developments and for Expedited Consideration. Jessica filed a response opposing the motion. Generally, this Court does not consider additional pleadings after the conclusion of briefing and submission to the Court, and the Montana Rules of Appellate Procedure do not provide for such motions. Therefore, we have limited our consideration to the briefs Matthew submitted in accordance with the rules.